UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ICO SERVICES, LTD., d/b/a BLOCK X BANK,<br><br>    Plaintiff,<br><br>v.<br><br>COINME, INC., d/b/a UP GLOBAL SEZC,<br><br>    Defendant. | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff ICO Services, Ltd., d/b/a Block X Bank, by and through its undersigned counsel, as and for its Complaint against Defendant Coinme, Inc., d/b/a Up Global SEZC, states and alleges as follows:

### Nature of Action

1.  This is an action for breach of contract, unjust enrichment and breach of the implied covenant of good faith and fair dealing based on Defendant's failure and refusal to pay Plaintiff for services rendered pursuant to a valid and enforceable agreement between the parties.

### Parties

2.  ICO Services, Ltd., d/b/a Block X Bank ("Plaintiff" or "Block X") is a corporation duly organized and existing under the laws of Hong Kong. Block X has its principal U.S. office at 1412 Broadway, 21st Floor, New York, New York 10018.

3. Coinme, Inc., d/b/a Up Global SEZC ("Defendant" or "Coinme") is, upon information and belief, a corporation organized and existing under the laws of the State of Washington, with its principal office at WeWork, 500 Yale Avenue North, First Floor, Seattle, Washington, 98109.

## Jurisdiction and Venue

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant and the matter in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue in this District is proper under 28 U.S.C. §1391 because Plaintiff has an office in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

6. This Court may exercise personal jurisdiction over Defendant because, among other things, Coinme elected to do business with a company located in New York, regularly communicated with Block X representatives in New York, the contract at issue requires application of New York law, and, upon information and belief, New York residents are Coinme customers and/or investors and Coinme makes frequent use of interstate communications to conduct negotiations, make representations and engage in ongoing business within this District.

## **FACTS**

7. On or about October 16, 2017, Coinme launched a token sale in an initial coin offering ("ICO") for cryptocurrency tokens called UpTokens.

2

8. By early November, Coinme was reporting it had raised $5 million in token sales in the UpToken ICO. It sought out Block X to act as a consultant for the ICO to continue its momentum and reach its reported $30 million goal.

9. By agreement, dated November 13, 2017 ("the Agreement"), Block X and Coinme executed a contract whereby Block X was to perform certain services for Coinme to assist it in the implementation of an ICO. The Agreement was to expire by its terms on January 31, 2018. A true and correct copy of the Agreement is attached hereto as <u>Exhibit A</u>.

10. Among other terms, the Agreement provides that invoices submitted by Block X are due within 30 days of issuance with late charges to accrue if payment in full is not tendered on time. <u>See</u> Exhibit A at ¶3.

11. The Agreement provides that Coinme will pay Block X a nonrefundable fee of $25,000, half to be paid upon execution of the Agreement and the other half to be paid on or before December 11, 2017. <u>Id</u>. at Schedule 1.

12. The Agreement provides that Coinme will pay Block X "3% of the tokens raised in the ICO excluding the $5 million US Dollars raised to date." <u>Id</u>.

13. The Agreement provides that Coinme will pay Block X "3% of the tokens created in the ICO excluding the tokens created in exchange of the $5 million US Dollars raised to date." <u>Id</u>.

14. The Agreement provides that "[e]ither party may terminate th[e] Agreement for any reason or for no reason, at any time upon 10 days' prior written notice." <u>Id</u>.

15. The Agreement provides that Block X would be responsible for certain work product, including, among other things, a road show in November 2017, digital marketing consulting and introductions to investors and influencers. Id.

16. The Agreement also provides that Coinme is required to provide its "[c]ompany financials or other evidence of revenue." Id.

17. After the Agreement was signed, in November 2017, Block X's principal, Mr. George Popescu, arranged for several days of meetings in Singapore with investors and influencers, as well as a road show, inviting Coinme's principal, Mr. Neil Bergquist, to join him.

18. Bergquist spent only 2 hours in Singapore with Mr. Popescu despite Mr. Popescu asking Bergquist to join him for the entire road show.

19. Block X attempted to schedule another road show for Coinme, but it was never provided schedules or other information required for organizing the show despite numerous attempts to do so.

20. On December 12, 2017, a press release was issued reporting that Coinme had sold more than $10 million in tokens to date.

21. In February 2018, after the Agreement had expired by its terms, and after the ICO had ended, Coinme reported the UpToken ICO had raised $18,934,021.

22. Coinme has not paid Block X the remaining $12,500.00 owed of the nonrefundable fee, and has not paid the other amounts owed to Block X under the Agreement.

23. On January 29, 2018, Block X, through its attorney, sent a demand letter to Coinme for the full amount owed for the unpaid portion of the nonrefundable fee, the 3%

4

of tokens raised and the 3% of tokens created in the ICO as described more fully in the Agreement. The total amount owed as of that letter was $972,684.30 in USD and 4,486,075.05 UpToken, based on the then-current exchange rate of ETH to USD[1] and the average UpToken price from the date of the Agreement to the end of the ICO.

24. To date, Coinme failed and refused to pay any of the amounts owed to Block X.

25. In addition, Block X has also asked for Coinme's financial information with regard to the ICO, but Coinme has failed and refused to supply those documents.

## COUNT I - BREACH OF CONTRACT

26. Block X restates the matters set forth in paragraphs 1-25 above as if set forth herein.

27. A binding contract exists between Block X and Coinme.

28. Block X has fully performed all its obligations under the Agreement.

29. Pursuant to the terms of the Agreement, Coinme is required to pay Block X a nonrefundable fee, 3% of the tokens raised in the ICO and 3% of tokens created in the ICO.

30. Coinme breached the Agreement by failing and refusing to pay Block X the amounts it is owed under the Agreement.

31. Coinme further breached the Agreement by failing to provide the financial records requested by Block X.

---

[1] ETH is an abbreviation for ether, a digital bearer asset that purchasers of UpToken buy with U.S. dollars, which are then used to purchase UpTokens in a single, seamless transaction.

32. Block X has suffered damages of more than $972,684.30 as a result of Coinme's breach, acts and omissions.

## COUNT II - QUANTUM MERUIT

33. Block X restates the matters set forth in paragraphs 1-32 above as if set forth herein.

34. The services performed by Block X for the UpToken ICO were done at the request of Coinme.

35. Block X rendered valuable services to Coinme and Coinme accepted and received the benefit of Block X's services.

36. A reasonable person in the position of Coinme would have understood that Block X sought to be paid for its services.

37. Coinme has been unjustly enriched by failing to pay the reasonable value of the work performed and materials furnished by Block X.

38. To allow Coinme to retain the value of those services without payment would be against equity and good conscience.

39. As a result, Block X has suffered a loss of more than $972,684.30 for its services.

## COUNT III - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

40. Block X restates the matters set forth in paragraphs 1-39 above as if set forth herein.

41. A covenant of good faith and fair dealing is implied into every contract in the State of New York.

6

42. The covenant requires the parties to remain faithful to their intended and agreed upon expectations concerning contractual performance and prohibits one party from injuring the other's right to reap the benefits prescribed by the terms of the contract.

43. The Agreement is valid and enforceable, and thus a covenant of good faith and fair dealing is implied.

44. Coinme acted arbitrarily, unreasonably, and not in accordance with its expected contractual performance, by failing to pay Block X for the services provided under the Agreement.

45. As a result, Block X has suffered significant damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that a judgment be entered granting the following relief:

1. That the Court enter judgment in favor of Plaintiff on all counts;

2. That the Court enter an award of damages in Plaintiff's favor in an amount to be proven;

3. That the Court award Plaintiff interest and its reasonable attorneys' fees and costs incurred in prosecuting this action; and

4. That the Court grant Plaintiff such additional legal and equitable relief in its favor as this Court deems just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: New York, New York
      May 14, 2018

                              Respectfully submitted,

                              ICO SERVICES, LTD., d/b/a BLOCK X BANK
                              By its attorneys,

                              */s/ Julie R. Bryan*
                              Julie R. Bryan (BBO# 666950)
                              (pro hac vice admission pending)
                              CASNER & EDWARDS, LLP
                              303 Congress Street
                              Boston, MA 02210
                              Tel. (617) 426-5900

                              -and-

                              */s/ Irwin Weltz*
                              Irwin Weltz
                              Thomas Scot Wolinetz
                              SICHENZIA ROSS FERENCE KESNER LLP
                              1185 Avenue of the Americas, 37th Floor
                              New York, N.Y. 10036
                              Tel (212) 930-9700